I'm here today representing John Crain in an individual claim as well as a claim on behalf of the loss of his wife. The issue today is pretty clear cut. It's simply whether or not an uninsured motorist policy should stack and therefore whether or not a second underinsured motorist policy issued by State Farm should apply. The trial court simply made an error by reading one provision of the contract and ignoring two paragraphs that follow immediately thereafter. By the way, did you both get the, about the DeMayo or DeMayo case? Yes, Judge. You're prepared to talk about it? Okay. It seems to me it's controlling. I'm sorry? It seems to me it's controlling. Judge, the DeMayo case is really a stacking of liability, which is not really relevant to what we have here at all. This is stacking of underinsured motorist coverage rather than liability. Well, there are factual differences, but it's the reasoning of it, the reasoning in contract interpretation or insurance policy interpretation, you know, with the word any and the words here without any are just referring to other State Farm policies. I mean, other policies other than State Farm. Any and such, yes. Well, first of all, again, that's a liability policy. It's in a different provision of the insurance policy, but here when you look at paragraphs two and three, there are no references along those lines, and it simply ignores Those aren't insuring provisions. I'm sorry? Those aren't insuring provisions. Except when you read them, they make it clear what is coverage and covered in what context. Only if you read them in isolation. Can you possibly get to where you are? Oh, Judge, I disagree. I don't think there's any question that when you read paragraphs... I mean, the key, what's important to this case to me and why DeMayo is virtually controlling is that all of these provisions that we're talking about are in the UIM coverage part, unlike all of the cases you were lying in most particularly manner. But Judge Long, if you look at the Long case, the language is included within it. And frankly, what I think it would be more controlling than anything else in this district would be the decision made three weeks ago in the Jordan case. This court in Jordan versus Safeco, January 15th, 2014, talked about having overlapping and multiple anti-stacking languages and how that doesn't matter. You still have to look to see if there is unambiguous language. That decision was made by the panel of Judge Malloy, Murphy, and Shepard. And in that case, they go out of their way to say, because Safeco's argument was, wait a minute, Court, we've got a whole bunch of anti-stacking provisions. They're all through our policy. And the court says, this argument does not prevail for Safeco because, as illustrated in Ritchie, one of the Missouri Supreme Court cases we cite, even where even one clause can be reasonably interpreted to provide for stacking of UIM coverage in certain circumstances, despite repeated and general references in the policy stated otherwise, an ambiguity is created. That's exactly what we have here. And that is far away. It's not. First of all, I mean, the Missouri courts are clear that the policy language controls. You can't take a Safeco policy and apply the results to a state farm policy. Here, we have interrelated provisions in the same subpart of the policy. And you're saying you can't read section one because we can figure out a way that you can isolate sections two and three. And we can ignore entirely the limits provision that's in the UIM subpart, not back on the deck page. And that's just not what these Missouri cases say. Judge, I couldn't disagree more. I think you're actually reading it backwards from my perspective. You're arguing it's got to be the totality. I say it's got to be the totality of the UIM subpart. And there's three subparts, one, two, and three, and all three have to be read. Together. Together. That's correct. And when you look... The sentences in two and three that you want to... But if not, Judge, they have no meaning. And if they don't have any meaning, why are they in the policy? And doesn't that additionally go on to say... Because they apply to other policies. Why is there plenty of meaning? You look in there, they both refer to uninsured motors coverage provided, underinsured, provided by one or more sources other than state farm companies. And here you're trying to link state farm, and of course you go back to one, and they say we don't stack in this situation. If two and three weren't in here, I wouldn't be standing before you today. Oh yeah, you would. You'd just have another ambiguity somewhere. Judge, I would not file this case. I guarantee you. But here, they put a period, and find the forward policy, which was the car that's involved in the accident, as primary coverage, because the car was being occupied. But they put a period, they didn't put a colon, they didn't put a semicolon. And then they go on just to say that in certain circumstances, how do you balance out the policies? This is where you have one state farm and other policies. If, then. And here's if you have two state farms and other policies, but it's referring again to policies that are primary. Primary. And then if you have two state farms in a policy, then you read this if language, which then specifically refers back to one. That's the only time it makes reference to one, which is the anti-stacking language. And then when you take it to Section 3, which follows thereafter, it specifically defines this policy as excess. And then it says what happens, again, there's a period there, no colon, no semicolon. What happens if you have one state farm and others? Then this. Or if you have two state farms and then others, but it's two excess, or one excess, plus another. If you have two state farms plus others in excess, then you make reference to the anti-stacking language. Otherwise, if you don't read it that way, two and three have been read out of the policy. They haven't. That's just wrong. You've read the introductory limits provision in the UIM subpart out of your argument. You're saying that a reasonable insured reading that subpart in its totality would ignore the limits in Section 1? A reasonable person could read it, one, anti-stacking language, two, I've got primary coverage, and three, I've got excess. That's how a reasonable person can read that policy? Only a somewhat reasonable lawyer can arguably read it. I mean, no insured would, well, I can't say that, but no insured reads them until a lawyer tells them how they need to be read. If you're right, then the judiciary has written stacking into Missouri law because there is no way an insurer could achieve a completely unambiguous anti-stacking provision. Judge, I submit that's the most logical reading of the policy. There's ambiguity or it's clear that there's coverage under that policy. Thank you. Again, we believe the trial court erred in writing two and three out of the policy. I'll take any other questions on rebuttal. Thank you. Thank you. Good morning. Is Mr. Bose? It's Bose, Your Honor. Bose. Thank you, though. Brian Bose on behalf of State Farm Mutual Automobile Insurance Company. May it please the court. Judge Logan, further to your point earlier about the interpretation of the policy in light of the DeMeo decision, my interpretation, and in trying to answer the court's question about how DeMeo applies here, I think, in essence, DeMeo simply stands for the proposition that if paragraph one in our case is deemed to be unambiguous, which we believe that it is, the court need not expand its focus beyond the anti-stacking clause. The underinsured motorist vehicle coverage portion of the policy relates to and its purpose is to establish the order and timing of payment. When you look at paragraphs two and paragraphs three of the other UIM coverage portion, it's plain that paragraph two addresses the possibility of a situation where the vehicle in this instance being occupied would have been the Pontiac. That wasn't the case here. The vehicle being occupied by the cranes at the time of the accident was the Ford. $50,000 of the UIM limits were paid under the Ford policy. There is no ambiguity under paragraph two because simply the cranes were not occupying the Pontiac and that is the policy under which plaintiff insists UIM coverage should be made available to them in this case. Paragraph three is likewise tied to the operation of a vehicle, but more importantly it only applies if there is other UIM coverage available and more precisely other UIM coverage provided by a company other than State Farm. Read in totality, paragraphs one, two, and three do not require nor permit under the facts of this case for the fact finder or the court to reach paragraphs two and three to determine the issue of ambiguity because one need never go beyond paragraph one. It plainly and ambiguously informs Mr. Crane that the highest limits available are those UIM limits provided by any one policy that he had with State Farm. He was paid those policy limits under the tourist policy. That's all there was that was available and there's no room for a contrary construction in our view. I believe that's what Judge Wimes found and we ask the court to affirm his grant of summary judgment in favor of State Farm and the denial of the cross motion of the plaintiffs for summary judgment on the grounds that were just argued by Mr. Sullivan. Candidly, Your Honor, I don't know that I could add anything more significant. What about de Mayo? I'm sorry? What about de Mayo, de Mayo? How does that apply or not apply? I believe it's applicable in this respect and I think Judge Logan referred to it at least in two ways. But most importantly, it's that the provision we're looking at is all within a single provision subpart of the policy. Here, it's all of these provisions, one, two, and three are under a discrete section of the policy, the underinsured motorist coverage section. It's not like we have to go look at another part of the policy and import an anti-stacking provision back into the UIM coverage. The limits and the UIM, I'm sorry, the limits and the other UIM coverage provisions are within a single subpart of the policy, which, to the benefit of both the insurer and the insured, eliminates any ambiguity because one only need look at a discrete subsection of the policy to interpret what it is the parties bargained for. So, in our view, de Mayo establishes that there is no ambiguity here because all of the relevant language for the insured, the reasonable person in the position of the insured to consider, are found in one section of the policy. And they couldn't be confused or deceived or in any way led to believe that there was some ambiguity by having to look elsewhere. Plus the other source clarification. That's right. Which distinguishes... Right. ...a small host of Missouri cases. And I think that point is well taken, Your Honor. Plus, you know, it would be clear to the reasonable person in the position of the insured in reading paragraphs two and three, in order for either of these to apply, I've got to have UIM coverage through some insurer other than State Farm. And if that element, if that condition, if you will, is not met, no reasonable person in the position of the average insured could read two and three and believe that, in this case, the Ford policy was primary and the Catalina-Pontiac policy was excess. Because there's simply no other UIM insurance provided by another insurer other than State Farm. Therefore, we have to default back to paragraph one and that the only available coverage limits under the State Farm policy are the highest applicable limits Here, the Ford and the Catalina-Pontiac policy both had identical limits. The Ford policy, the $50,000 limits were paid. There simply was no... Well, the policy also says the maximum, doesn't it? Yeah, and in this instance, that happened to be the maximum amount for each person was $50,000. So, from our perspective, the parties bargained for exchange was met by State Farm when they paid the limits. Obviously, we reserved the right of the plaintiff to pursue the claim to try to demonstrate the ambiguity. But we believe, at the end of the day, in a final analysis, they're attempting to create an ambiguity where none exists. If the court has any other questions, I'll be happy to address them. Otherwise, I believe that's all I could add. Okay. Thank you very much. Thank you. How much time does Mr. Sullivan have? Two minutes, Your Honor. Okay. Mr. Sullivan? Please, Your Honor. A couple of brief responses. I believe if you look at the case that we cite of Long, there is reference, it's a 2011 case, to limiting the coverage that it's within the other insurance in the company section, which I believe applies to the UIM. Again, the case that this court decided three weeks ago, very much on point. I firmly believe that if any... believe that DeMayo was on point, it would have been briefed in one of the briefs. I could be wrong, but I don't recall seeing it anywhere because it's a stacking of liability policy. Paragraph one, as Mr. Booth said, is there any stacking language? We understand that. And as State Farm wants, State Farm wants you to read the first paragraph and stop reading. That's not a reasonable reading of the policy. You have to read the entire policy, read it in its totality, and when you do, you find one car that was occupied, which is the primary coverage, a second car which was not occupied, which is therefore excess coverage, and the only way to read and understand and define excess coverage is that it's over and above something else. If you have any other questions, I'm happy to address them. Otherwise, I will conclude and just ask the court to reverse the decision of the trial court and given the fact that damages and facts have been stipulated, that judgment be entered for the plaintiff. Okay. Thank you very much. Thank you. Again, we'll... And thank you for coming to Kansas City and saving us a trip. Well, thank you. It's our pleasure. We like to come to Kansas City. So we will take it under advisement and be back to you as soon as we can.